IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE KAGAN, et al, | ) Case Nos. 09-5337 SC |
| | )            11-0412 SC |
| Plaintiffs, | ) |
| | ) ORDER DENYING PLAINTIFFS' |
| v. | ) MOTION FOR PRELIMINARY |
| | ) APPROVAL OF PROPOSED CLASS |
| WACHOVIA SECURITIES, L.L.C., et al, | ) <u>SETTLEMENT</u> |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

I.   **INTRODUCTION**

Now before the Court is a Motion for Preliminary Approval of a Proposed Class Settlement.  ECF No. 87 ("Mot.").  Plaintiffs are or were beneficial owners of securities issued by the Asia Pulp and Paper Company ("APP").  Plaintiffs allege that they purchased APP securities through Defendants Wachovia Securities, L.L.C., Wachovia Securities Financial Network, L.L.C., Wachovia Capital Markets, L.L.C., Wells Fargo Advisors., L.L.C., Wells Fargo Advisors Financial Network., L.L.C., Wells Fargo Securities, L.L.C., and Wells Fargo & Company, or their successors in interest (collectively, "Wachovia" or "Defendants").  Plaintiffs bring claims for negligence, breach of contract, and breach of fiduciary duty against Wachovia, all stemming from Wachovia's alleged failure to provide Plaintiffs with required notice of an earlier class action settlement reached by APP.  Wachovia and Plaintiffs have

United States District Court
For the Northern District of California

reached an agreement to settle these claims.  The Court determines pursuant to Civil Local Rule 7-1(b) that Plaintiffs' Motion is suitable for decision without oral argument.  For the reasons set forth below, the Court DENIES the Motion without prejudice.

II.  **BACKGROUND**

   A.  **Previous Litigation**

   The following factual allegations are taken from Plaintiffs' Amended Complaint.  ECF No. 35 ("Am. Compl.").  Plaintiffs are beneficial owners of securities issued by APP.  Id. ¶¶ 2-7.[1] Defendants, or their predecessors in interest, are brokerage firms and the nominee or record owners of the APP securities.  Id. ¶¶ 1, 8-15, 18, 23.  While the nominee or record owners appear on official corporate transfer records, the actual interest in the security is that of the beneficial owner.  Id. ¶ 18.

   On August 8, 2001, APP was sued in the Southern District of New York for violations of securities laws.  Id. ¶ 19.  On October 18, 2005, the District Court preliminarily approved a settlement in the action ("the APP Settlement").  Id. ¶ 20.  The District Court's order required nominee owners -- here, Wachovia -- to either forward notice of the APP Settlement to the beneficial owners or to provide the beneficial owners' names and contact details to the APP Settlement administrator.  Id. ¶ 21.  Plaintiffs allege that Defendants, or their predecessors in interest, failed to do either.

---

[1] The FAC contains a numbering error, such that the first three paragraphs are sequentially numbered 1 through 3, but the fourth paragraph restarts the sequence at 2.  This citation refers to the set of paragraphs appearing under the heading "Parties," beginning at the second paragraph numbered "2."

United States District Court
For the Northern District of California

Id. ¶¶ 3,[2] 24.  Plaintiffs further allege that if they had been notified, they would have submitted claims and obtained a recovery. Id. ¶¶ 25-36.

On November 10, 2009, Plaintiffs filed a putative class-action lawsuit against Defendants.  ECF No. 1 ("Compl.").  On July 7, 2010, the Court dismissed the Complaint without prejudice.  ECF No. 32.  On August 6, 2010, Plaintiffs filed their Amended Complaint asserting claims for negligence, breach of fiduciary duty, and breach of contract.  Am. Compl. ¶¶ 47-62.  On November 23, 2010, the Court denied Wachovia's motion to dismiss these claims.  ECF No. 48.[3]  On January 25, 2012, the parties filed the instant Motion, accompanied by a joint stipulation of class settlement and release.  ECF No. 87-2 ("Sett. Stip.").[4]

**B.**   **The Stipulated Settlement**

1.   Proposed Settlement Class

The stipulated settlement provides for a proposed settlement class of up to 1,162 members.  See id. at 11.  The proposed class consists of persons who both (1) were beneficial owners of APP securities during the period covered by the APP Settlement, August 28, 1998 to April 4, 2001, and (2) had Wachovia accounts during the APP Settlement's notice period, November 30 through December 19, 2005.  Id. at 5 (definition of "APP Class Period"), 9 (definition

---

[2] This citation refers to the first paragraph numbered "3."

[3] On November 23, 2009, Plaintiff Brent Balkema filed a separate but substantially identical lawsuit in this District, Balkema v. Wachovia Securities, LLC, et al., No. 11-412 SC.  On July 5, 2011, this Court denied a motion to dismiss Balkema's case and consolidated it with the instant case.  ECF No. 66.

[4] Counsel for Plaintiffs, Richard L. Kellner, also submitted a declaration in support of the Motion.  ECF No. 87-1 ("Kellner Decl.").

1 of "Class Period"), 11 (definition of "Potential Class Members").

2    The 1,162 potential class members were identified by

3 Defendants rather than Plaintiffs.  Id. at 11.  Plaintiffs

4 conducted limited discovery to confirm Defendants' identification

5 of the potential class and to determine the amount of damages

6 allegedly owed.  Kellner Decl. ¶ 4.  The parties forthrightly admit

7 that Defendants' records are incomplete, in that Defendants lack

8 complete or reliable data for some potential class members

9 regarding "purchase dates, price, quantity and other information .

10 . . . ."  Sett. Stip. at 11.

11    Apparently to address this difficulty, the parties have

12 divided the class into two categories.  The first, "Category A,"

13 consists of 715 persons "for whom Defendants believe they have all

14 trade information necessary to determine that they are Class

15 Members . . . ."  Id.  According to the parties, the 715 potential

16 members of Category A are entitled to no more than $306,940.56

17 collectively.  Id.  Category A consists of holders of APP bonds, as

18 compared to APP stocks.  Id.

19    The second category, "Category B," consists of persons for

20 whom "the available electronic data is . . . insufficient to

21 determine both whether they are class members and if so, how much

22 money they might be able to claim in this settlement."  Id.  There

23 are 447 Category B potential class members, which represents

24 roughly 38 percent of the total class.  See id.  Of the 447, "353

25 have been determined to have traded in APP stock securities."  Id.

26 As the Court reads the papers, these 353 -- roughly 30 percent of

27 the total class -- appear to be entitled to at least some recovery

28 under the stipulated settlement.  For the remaining 94 members of

1 Category B, "incomplete or unreliable data do not permit a
2 determination as to the APP Securities held, if any." Id.  In
3 other words, the parties cannot determine from Wachovia's records
4 whether the members of this group of 94 are truly class members and
5 therefore entitled to recovery.  The group of 94 comprises about 8
6 percent of the total class.

7                 2.   Class Recovery, Attorney Fees, and Costs

8        Under the proposed settlement, Wachovia has agreed to pay each
9 class member who submits a valid claim the entire amount to which
10 the APP Settlement would have entitled him or her, minus attorney
11 fees and incentive payments for the lead Plaintiffs.  See Mot. at
12 5-6.  As noted above, the parties estimate that Category A
13 potential class members will recover a maximum aggregate amount of
14 $306,940.56.  The parties do not estimate how much, if anything,
15 Category B potential class members will recover.

16        Plaintiffs' counsel has agreed to request no more than
17 $100,000 for their fees and costs, and Wachovia has agreed not to
18 oppose the request.  Sett. Stip. at 28-29.  The settlement also
19 provides incentive payments of up to $750 for plaintiff Theodore
20 Kagan and up to $500 each for the other six named plaintiffs.  Mot.
21 at 6.  Assuming each named plaintiff receives the maximum amount
22 requested, the incentive payments would total $3,750.  Together,
23 attorney fees and incentive payments would reduce the potential
24 class recovery by up to $103,750.  This represents 33.8 percent of
25 the estimated recovery, assuming no recovery for Category B.[5]

_____

26 [5] The Court appreciates that the 33.8 percent figure will go down
27 if Category B class members recover.  But, for the reasons
explained in Sections IV.B and C, the Court is not optimistic about
28 Category B's prospects at this juncture.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   The settlement stipulation would also appoint a settlement

2   administrator.  Id.  Wachovia has agreed to pay the settlement

3   administrator's reasonable fees and costs separate and apart from

4   the settlement fund, so the cost of administering the claims

5   process would not be deducted from the potential class members'

6   recovery.  Id.

7               3.  Notice and Claim Forms

8       The parties propose to notify the class of the settlement by

9   first-class mail sent to each potential class member's last-known

10  address.  Sett. Stip. at 18-19.  The notice materials consist of a

11  fifteen-page, single-spaced Class Notice, an Election Not To

12  Participate In Settlement form, and, depending on which category

13  the potential class member belongs to, either a Category A or

14  Category B Proof Of Claim form.  Id. at 11; Kellner Decl. Exs. B

15  ("Class Notice"), C ("Election Not To Participate In Settlement"),

16  F ("Category A Proof of Claim") & G ("Category B Proof of Claim").[6]

17  The Category A Proof Of Claim indicates that Defendants will send

18  potential class members Wachovia's records of their APP holdings.

19  See Category A Proof of Claim at 2.  Category A potential class

20  members may submit documentary evidence to correct any inaccuracies

21  in Wachovia's records, but are not required to do so.  Id. at 2-3.

22      The Category B Proof Of Claim form is similar in all but one

23  important respect.  Like the Category A Proof of Claim form, the

24  Category B form includes Wachovia's records, if any, of the

25  potential class member's APP holdings -- but in the case of

26  Category B, these records are described as "inaccurate or

27

28

[6] Two exhibits to Kellner's declaration are labeled "Exhibit B."
The first is the Class Notice.  The second, which follows Exhibit
G, is the resume of Kellner's firm.

1    incomplete," and the potential class member must "independently

2    verify" and "submit documentary evidence" of their APP holdings,

3    rather than, as in the case of Category A, submitting documents

4    only if needed to correct an inaccuracy.  Compare Category B Proof

5    Of Claim at 2-3 with Category A Proof Of Claim at 2-3.

6              4.   Scope of Release

7         Both Category A and Category B potential class members are

8    included within the settlement's proposed release of liability.

9    See Sett. Stip. at 16-17.  The release would purportedly settle,

10   among other things, "any and all claims" related to the allegations

11   and claims in the Amended Complaint, and also any claims "which

12   relate in any way to the purchase, sale or custody of APP

13   Securities during the APP Class Period . . . ."  Id. at 13.

14

15   **III. LEGAL STANDARD**

16        No class action may be settled without court approval.  Fed.

17   R. Civ. P. 23(e).  When the parties to a putative class action

18   reach a settlement agreement prior to class certification, "courts

19   must peruse the proposed compromise to ratify both the propriety of

20   the certification and the fairness of the settlement."  Staton v.

21   Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  First, the Court

22   must assess whether a class exists.  Id. (citing Amchem Prods. Inc.

23   v. Windsor, 521 U.S. 591, 620 (1997)).  Second, the court must

24   determine whether the proposed settlement "is fundamentally fair,

25   adequate, and reasonable."  Hanlon v. Chrysler Corp., 150 F.3d

26   1011, 1026 (9th Cir. 1998).

27   ///

28   ///

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

IV.  **DISCUSSION**

    **A.**  **Class Certification**

    Federal Rule of Civil Procedure 23(a) provides four requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class").  Fed. R. Civ. P. 23(a)(1)-(4).  In addition, the court must also find that the requirements of Rule 23(b)(1), (b)(2), or (b)(3) are satisfied.  Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S. Ct. 2541, 2548 (2011).  Rule 23(b)(3) requires a finding by the court "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Courts refer to the requirements of Rule 23(b)(3) as its "predominance" and "superiority" requirements.  E.g., Amchem, 521 U.S. at 615.

    1.  Numerosity

    Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable."  Fed. R. Civ. P. 23(a)(1).  However, "impracticable" does not mean impossible; it refers only to the difficulty or inconvenience of joining all members of the class.  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14

1   (9th Cir. 1964).

2       Here, the parties estimate that the class consists of up to

3   1,126 potential members.  <u>See</u> Sett. Stip. at 11-12.  In support of

4   this estimate, Plaintiffs' counsel declares that Wachovia has

5   provided a list of its customers who have been identified as

6   potential class members, and that his firm has confirmed Wachovia's

7   list.  Kellner Decl. ¶ 4.  Based on the parties' representations as

8   to the number of potential class members, the Court finds the

9   numerosity requirement to be satisfied.

10          2.   <u>Commonality</u>

11      Rule 23(a)(2) requires that there be "questions of law or fact

12  common to the class."  Fed. R. Civ. P. 23(a)(2).  This

13  "commonality" requirement "requires the plaintiff to demonstrate

14  that the class members 'have suffered the same injury.'"  <u>Wal-Mart</u>,

15  131 S. Ct. at 2551 (quoting <u>Gen. Tel. Co. of the Southwest v.</u>

16  <u>Falcon</u>, 457 U.S. 147, 157 (1982)).  The class members' "claims must

17  depend on a common contention," and that common contention must be

18  "of such a nature that it is capable of classwide resolution --

19  which means that determination of its truth or falsity will resolve

20  an issue that is central to the validity of each one of the claims

21  in one stroke."  <u>Id.</u>

22      In this case, each potential class member's alleged injury is

23  identical in kind: each allegedly was entitled to receive notice of

24  the APP Settlement from Wachovia, but did not.  Any difference

25  between the injuries allegedly suffered by particular class members

26  is merely one of degree, that is, the amount of settlement money

27  that they missed out on due to Wachovia's alleged failure to notify

28  them.  That difference is not enough to destroy the basic

**United States District Court**
For the Northern District of California

commonality of their claims.  Accordingly, the Court finds the commonality requirement to be satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the representative parties' claims be "typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.  Here, however, the named Plaintiffs' claims are substantially identical.  Each Plaintiff alleges, in brief, that they were the beneficial owner of APP Securities; that they never received notice of the APP Settlement from Wachovia, the record owner of the securities; and that they would have submitted a claim if they had known of the APP Settlement.  These allegations entirely comport with the definition of the proposed class. Accordingly, the Court finds that the typicality requirement is satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This factor requires: (1) that Plaintiffs are represented by qualified and competent counsel and (2) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class.  Hanlon, 150 F.3d at 1020.

The declaration submitted by Plaintiffs' counsel discusses his firm's "extensive experience in complex and class action litigation" and related qualifications.  Kellner Decl. ¶¶ 8-11.

United States District Court
For the Northern District of California

1    Plaintiffs' counsel has also provided his firm's resume.  <u>See</u> note

2    6 <u>supra</u>.  Having reviewed the papers, the Court sees no issue with

3    the qualifications of Plaintiffs' counsel and, as discussed above,

4    Plaintiffs' claims are coextensive with those of the settlement

5    class.  Accordingly, the Court finds that the proposed settlement

6    class is adequately represented.

7              5.   <u>Predominance and Superiority</u>

8         Rule 23(b)(3) requires the court to find that "the questions

9    of law or fact common to class members predominate over any

10   questions affecting only individual members."  Fed. R. Civ. P.

11   23(b)(3).  While evaluation of Rule 23's predominance requirement

12   on a settlement motion does not require an analysis of potential

13   trial management problems, "other specifications of the Rule --

14   those designed to protect absentees by blocking unwarranted or

15   overbroad class definitions -- demand undiluted, even heightened,

16   attention in the settlement context."  <u>Amchem</u>, 521 U.S. at 620.

17   The terms of a proposed settlement are "relevant to a class

18   certification."  <u>Id.</u>  Rule 23(b)(3) also requires that the class

19   action be "superior to other available methods for fairly and

20   efficiently adjudicating the controversy."  Fed. R. Civ. P.

21   23(b)(3).  The factors relevant to assessing superiority include:

22        (A) the class members' interests in individually
          controlling the prosecution or defense of separate
23        actions; (B) the extent and nature of any litigation
          concerning the controversy already begun by or against
24        class members; (C) the desirability or undesirability of
          concentrating the litigation of the claims in the
25        particular forum; and (D) the likely difficulties in
          managing a class action.
26

27   Fed. R. Civ. P. 23(b)(3).

28        Here, the Court determines that common issues of law and fact

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

predominate.  As discussed in Section IV.A.2 <u>supra</u>, if potential

class members were to sue individually, each would bring

essentially the same claim against Wachovia, namely, the claim that

Wachovia breached a duty to provide the potential class member with

notice of the APP Settlement.  Under such circumstances, the class

action is an obviously superior method of fairly and efficiently

adjudicating these substantively identical claims, especially

because none of the countervailing factors enumerated in Rule

23(b)(3) are present here.  Accordingly, the Court finds that the

predominance and superiority requirements are met here.

Because all the requirements of settlement class certification

are satisfied here, the Court determines that an appropriate

settlement class exists.  <u>Staton</u>, 327 F.3d at 952 (citing <u>Amchem</u>,

521 U.S. at 620).  The Court therefore proceeds to determining

whether the proposed settlement "is fundamentally fair, adequate,

and reasonable."  <u>Hanlon</u>, 150 F.3d at 1026.

### B.   <u>Fairness of the Settlement</u>

The Ninth Circuit has warned that "there are real dangers in

the negotiation of class action settlements of compromising the

interests of class members," because "[i]ncentives inherent in

class-action settlements" can "result in a decree in which the

rights of [class members, including the named plaintiffs] may not

[be] given due regard by the negotiating parties."  <u>Staton</u>, 327

F.3d at 959 (internal quotation marks omitted).  These incentives

stem from the fact that "[t]he class members are not at the table;

class counsel and counsel for the defendants are."  <u>Id.</u>  This can

"influence the result of the negotiations without any explicit

expression or secret cabals," and is why "district court review of

**United States District Court**
For the Northern District of California

class action settlements includes not only consideration of whether
there was actual fraud, overreaching or collusion but, as well,
substantive consideration of whether the terms of the decree are
'fair, reasonable and adequate to all concerned.'"  Id. at 950
(citing Officers for Justice v. Civ. Serv. Comm'n of San Francisco,
688 F.2d 615, 625 (9th Cir. 1982)).  Due in part to these dangers
of "collusion between class counsel and the defendant," the Ninth
Circuit has adopted the rule that "settlement approval that takes
place prior to formal class certification requires a higher
standard of fairness," leading to "a more probing inquiry than may
normally be required under Rule 23(e)."  Hanlon, 150 F.3d at 1026.

   Not all proposed class action settlements require the same
level of court scrutiny.  A settlement that is structured so that
the interests of the class are tied to the interests of the named
plaintiffs, their counsel, or the defendant demands less scrutiny.
For example, a settlement that tethers the size of the class
counsel's attorney fee award to the number of claim forms submitted
or the amount disbursed to the class gives class counsel motivation
to ensure that notice to the class is as effective as possible.
Similarly, because a defendant benefits from the largest possible
release of liability, a settlement in which only class members who
submit a claim form release their claims against a defendant aligns
the interests of the defendant and the class members.

   Here, the proposed settlement goes beyond a mere lack of
alignment between the class's interests and those of the parties:
Wachovia's interests are in actual conflict with those of the
class.  This is not a lump-sum settlement; rather, the settlement
obligates Wachovia to pay only those class members who submit a

**United States District Court**
For the Northern District of California

1   valid Proof of Claim.  And Wachovia pays out on this limited basis

2   even though it receives a release of liability from the entire

3   class.  Wachovia, therefore, has an incentive to suppress the

4   number of claimants by undertaking minimal notice procedures and

5   making the process for submitting Proofs of Claim unduly difficult.

6   Additionally, Wachovia has agreed to pay for settlement

7   administration (such as the cost of notifying potential class

8   members and handling fees) separate and apart from the settlement

9   fund.  Normally, this would be a welcome gesture, but on the facts

10  of this case it appears to give Wachovia an additional incentive to

11  supply notice on the cheap.

12      The Court's concerns might be alleviated if it were apparent

13  that Plaintiffs and their counsel had incentives to advocate

14  vigorously on the class's behalf.  But they do not.  Even though a

15  class member's recovery is contingent on receipt of notice and

16  submission of a valid claim, both Plaintiffs and their counsel have

17  agreed to receive lump-sum payments.  The only persons guaranteed

18  to get a check from Wachovia in this case are named Plaintiffs and

19  their counsel, and the size of the check is unaffected by the size

20  of the benefit received by the class.  Plaintiffs and their counsel

21  lack any structural incentive to ensure that the class benefits

22  from robust notice and simplified claim procedures.

23      This misalignment of incentives reveals itself in the

24  particulars of the proposed settlement.  Most troubling is the

25  proposed settlement's treatment of Category B class members.  While

26  the parties estimate that Category A claimants may receive up to

27  roughly $306,000 in total, the parties provide no estimate for

28  Category B claimants.  And indeed, it is entirely possible that

**United States District Court**
For the Northern District of California

1  Category B claimants will receive no money at all, even though they
2  comprise nearly two-fifths of the class.  Unlike Category A
3  claimants, Category B claimants are required to engage in the
4  absurd exercise of proving to Wachovia that they were the
5  beneficial owners of securities purchased for them by Wachovia.
6  The Court notes that the relevant ownership period ended in 2001.
7  It would be a rare bookkeeper who retained careful records of a
8  stock purchase in an obscure paper company for a dozen years or
9  more -- especially when class members would have every good reason
10 to think that the record owner of the stocks would keep records.
11 Ultimately, the Court fails to see why Category B class members
12 should not enjoy the same presumption of recovery as Category A
13 class members.  The only apparent reason for the difference is that
14 Wachovia kept better records for the latter than the former; if
15 other reasons exist, the parties have not brought them to the
16 Court's attention.  As the matter now stands, it would be patently
17 unfair to permit Wachovia to benefit from gaps in its own records,
18 especially in a case like this one, which hinges on Wachovia's
19 alleged failures to provide proper notifications to its account
20 holders.

21      The Court is also concerned about the scope of the release
22 Wachovia has bargained for.  This case arises from Wachovia's
23 alleged failure to perform an essentially ministerial act, that is,
24 to provide its account holders with notice of a class action
25 settlement.  Yet the definition of "Settled Claims" stipulated by
26 the parties would release Wachovia not only from claims related to
27 this alleged ministerial failure, but also from any and all claims
28 "which relate in any way to the purchase, sale or custody of APP

United States District Court
For the Northern District of California

1  Securities during the APP Class Period . . . ."  Sett. Stip. at 13.
2  This release goes far beyond Wachovia's exposure to claims for
3  failures to provide notice.  The Court recognizes that because the
4  APP Class Period ended nearly eleven years ago, many claims covered
5  by this purported release likely would be time-barred.  But the
6  Court also recognizes that the release is worded broadly enough to
7  encompass claims that might be equitably tolled.  As a result, the
8  Court is concerned that the scope of release is too broad.  The
9  Court's concerns are exacerbated by the fact that, under the
10 parties' agreement, Category B class members -- that is, 38 percent
11 of the class -- might receive no payment at all in exchange for
12 this sweeping release.  This is especially unfair in light of the
13 fact that roughly four out of five members of Category B traded APP
14 stock during the APP Class Period and thus ought to receive some
15 recovery.  See Section II.B.1 supra.

16      In evaluating the fairness of this settlement with respect to
17 Category B class members, the Court also would like to know more
18 about the size of the initial APP Settlement and the percentage of
19 APP Settlement class members who were Wachovia account holders.  If
20 the entire APP Settlement amounted to only a few hundred thousand
21 dollars and most of the parties to the settlement were Wachovia
22 account holders, then a recovery of up to $306,000 for Category A
23 class members and relatively small recovery for Category B class
24 members might seem eminently fair.  But if the earlier settlement
25 was much larger, and the class had a high proportion of Wachovia
26 account holders, then the proposed settlement might not be fair.
27 Without some sense of the size of the APP Settlement and the
28 proportion of Wachovia account holders, the Court is hard-pressed

**United States District Court**
For the Northern District of California

to evaluate the proposal before it.  The parties should place this information before the Court.

The Court is also concerned by how little light the parties have shed on the distribution of settlement funds among individual claimants.  The parties have told the Court that a proper claimant will receive everything they would have received under the APP Settlement, minus Plaintiffs' incentive payments and Plaintiffs' counsel's fees and costs.  But this says very little about how the settlement would benefit a typical class member, since the parties have provided no information about the average, median, or highest individual recovery amounts, even for the Category A potential class members for whom Wachovia believes it has complete records.

As a result, the Court cannot ascertain whether it is fundamentally fair to require some, but not all, class members to undertake a laborious Proof of Claim procedure.  The Proof of Claim form for Category B class members requires them to independently verify and submit documentary evidence of their ownership of APP Securities during the APP Class Period.  Category B Proof of Claim at 3.  Then, after marshaling documentary evidence of securities transactions dating as far back as 1998, Category B claimants must navigate a complicated series of tables and coded charts.  See id. at 7-11.  Category B claimants who had more than one Wachovia account containing APP securities must repeat this process and provide a separate Proof of Claim form for each account.  Id. at 3. While a claimant might be motivated to leap such high hurdles if there were a significant reward at the finish line, the Court cannot discern from the papers submitted what recovery, if any, a typical claimant should expect.  Hence, the Court cannot determine

17

whether these procedures are justifiable.  Moreover, the parties have not explained why, as a matter of either fairness or practical necessity, it is the class who must fill in the gaps in Wachovia's bookkeeping, rather than Wachovia or Plaintiffs' counsel.

Finally, the Court finds that the objection process is excessively cumbersome.  The parties have agreed that objectors must mail a written objection not only to the settlement administrator, but also to both sets of counsel.  Sett. Stip. at 21.  Moreover, objectors must file their documents with the Court.  Id.  The Court sees no reason to require objectors to notify four parties when one -- the settlement administrator -- will do.

Because the Court has grave reservations about the fundamental fairness of the proposed settlement as it has been explained thus far, the Court DENIES Plaintiffs' Motion for Preliminary Approval of the Proposed Class Settlement.

**C.   Adequacy of Proposed Notice**

Though the concerns enumerated in the previous Section supply sufficient grounds to deny the instant motion, in the interest of judicial economy the Court now reviews the adequacy of the parties' proposed notice procedures.  The Court has additional concerns about these procedures.

Notice to a class must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests

1                           exclusion, stating when and how members may
                          elect to be excluded; and the binding effect of

2                           a class judgment on class members under Rule
                          23(c)(3).

3 Fed. R. Civ. P. 23(c)(2)(B).  The Court is concerned that the

4 parties may not have selected "the best notice practicable under

5 the circumstances."  The Court is particularly sensitive to this

6 issue in light of the origin of this lawsuit, Wachovia's alleged

7 failure to notify members of an earlier settlement class.  The

8 Court notes that, here, the parties have chosen to notify the class

9 only by first-class mail sent to class members' last-known

10 addresses.  The proposed class consists of individuals who had

11 Wachovia accounts in late 2005, and the Court is concerned that the

12 last-known addresses for some or many of these individuals may have

13 obsolesced in the intervening six-plus years.  This concern is

14 heightened further by the misalignment of incentives between

15 Wachovia and the proposed settlement class, and exacerbated by

16 Plaintiffs' failure to explain why the parties have included no

17 back-up system of notification, such as email or publication

18 notice.  Publication notice was used in the original APP

19 Settlement, ECF No. 1 Ex. B; the Court cannot fathom why this case,

20 which seeks relief for earlier failures of notice, calls for less

21 notice rather than more.

22     The Court also finds fault with the content of the proposed

23 Class Notice.  First, it is simply too long.  The Court is

24 concerned that few class members will read a fifteen-page, single-

25 spaced Class Notice without having been given some initial hint as

26 to why they should bother.  The parties should provide an industry-

27 standard short-form notice that directs them to the long-form

28 notice for details.  Second, the Class Notice does not provide

potential class members with enough information about the size of their possible recovery to make an informed decision about whether to accept the settlement.  The Class Notice tells class members that they may recover "what [they] would have received in the APP Litigation, minus a pro-rata percentage for attorneys' fees and incentive payments to the Class Representatives," Class Notice at 5, and that class counsel's request for $100,000 in attorney fees "will proportionally reduce your settlement payment," id. at 10. What the Class Notice does not say is how much this pro-rata, proportionate reduction might amount to, in either absolute or percentage terms.  The Class Notice tells class members, in essence, that they may recover a fraction of what they would have if they had received proper notice in the first place -- but it only tells them the fraction's numerator, not its denominator. From that information, it is impossible for a class member to determine how much of the settlement fund will be consumed by attorney fees and whether they should object.  The Court is concerned that class members will be unable, therefore, to make an informed decision about whether to accept the proposed settlement, withdraw from it, or object to it.  Plaintiffs' Motion makes it clear that, based solely on the maximum recovery of Category A claimants, attorney fees would consume roughly 34 percent of the settlement fund, if the Court awarded Plaintiffs' counsel all they ask for and Category B class members submitted no valid claims. But this information does not appear in the Class Notice.

In sum, the Court is not convinced that the proposed notice plan would provide the class with "the best notice practicable under the circumstances," as Rule 23 requires.  The parties have

1   not satisfied the Court that they are taking appropriate steps to

2   notify the largest practicable number of class members, or to

3   include important, readily available information in the notice.

4   The inadequacy of the proposed notice provides another, independent

5   reason for the Court to deny Plaintiffs' Motion.

6

7   **V.    CONCLUSION**

8        For the foregoing reasons, the Court DENIES without prejudice

9   Plaintiffs' Motion for Preliminary Approval of the Proposed Class

10  Settlement.  The Court determines that an appropriate settlement

11  class exists but that the Proposed Settlement must be rejected at

12  this time because, first, the Court cannot determine from the

13  information submitted whether the Proposed Settlement is

14  fundamentally fair, particularly to Category B class members, and

15  second, the proposed notice procedures would not notify the highest

16  practicable number of class members or give them adequate

17  information to evaluate the settlement.

18       Plaintiffs may resubmit an amended Motion and supporting

19  materials within thirty (30) days of this Order.  Failure to do so

20  will result in Plaintiffs' Motion being deemed DENIED WITH

21  PREJUDICE and the Court setting this action for trial.

22

23       IT IS SO ORDERED.

24

25  Dated: April 2, 2012

26  UNITED STATES DISTRICT JUDGE

27

28

**United States District Court**
For the Northern District of California